UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

John M. Calef

     v.                                    Civil No. 11-cv-526-JL
                                              Opinion No. 2013 DNH 023
Citibank, N.A. et al.

**MEMORANDUM ORDER**

    This action is one in a series of foreclosure-related actions pending in this court in the aftermath of what has come to be called the "mortgage crisis."  The fact pattern here is not uncommon:  plaintiff John M. Calef defaulted on his mortgage payment obligations, prompting an entity claiming to be the mortgagee to pursue foreclosure.  What _is_ uncommon about this case, though, is that the foreclosure sale went forward, and the foreclosure deed was recorded, before Calef filed this action seeking to invalidate the sale and enjoin his eviction from the property.  As pleaded in the complaint, Calef's claims are premised on several theories as to why the foreclosure was void.  While disparate, those theories can be grouped into two categories:  theories that an assignment of the mortgage to the foreclosing entity was invalid and theories that the foreclosure deed and accompanying affidavit were invalid.

    This court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) (diversity), because Calef is a New Hampshire

citizen, the defendants are citizens of other states, and the amount in controversy exceeds $75,000.  The defendants have moved for summary judgment, see Fed. R. Civ. P. 56, arguing that none of Calef's various theories entitles him to relief based upon the undisputed facts.  After hearing oral argument, the court agrees. Insofar as Calef's claims arise from alleged infirmities in the assignment of his mortgage to the foreclosing entity, New Hampshire law precludes him from pursuing those claims because he failed to file a petition to enjoin the foreclosure prior to the sale.  Insofar as Calef's claims arise from alleged infirmities in the foreclosure deed and affidavit, the undisputed material facts establish as a matter of law that no such infirmities exist--or none that would entitle Calef to relief, in any event. Summary judgment will accordingly be entered for the defendants.

## I.   <u>Applicable legal standard</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial.  See Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (citing Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)).  A fact is "material" if it could sway the outcome under applicable law.

2

Id. (citing Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving party."  Id.  The following facts are set forth accordingly.

II.  **Background**[1]

Plaintiff John M. Calef is the eponymous trustee of the John M. Calef February 1996 Revocable Trust, and in that capacity previously owned property in Meredith, New Hampshire.  In April 2007, Calef, acting both individually and as trustee, borrowed $650,000 from Aegis Wholesale Corporation.  The promissory note for the loan was secured by a mortgage on the Meredith property; the named mortgagee was Mortgage Electronic Registration Systems, Inc., or "MERS," acting "as a nominee for [Aegis] and [its] successors and assigns."

In September 2007, Aegis sold both the note and mortgage to Citibank, N.A., in its capacity as trustee for a securitized

---

[1]This section briefly recounts the key facts.  Of the 34 paragraphs of "undisputed material facts" set forth in defendants' memorandum of law, Calef has "admitted" 32.  See Memo. in Supp. of Obj. to Mot. for Summ. J. (document no. 24-1) at 2.  Plaintiff's memorandum is silent as to his position regarding the remaining two paragraphs, which are supported by citations to admissible record evidence.  The facts set forth in those two paragraphs are therefore deemed admitted as well, see L.R. 7.2(b)(2), and the court incorporates defendants' statement of undisputed material facts, in its entirety, by reference.

mortgage trust (though MERS, as nominee, remained the mortgagee
of record).  EMC Mortgage Corporation became the servicer for all
loans owned by the securitized trust, including Calef's.
Citibank, as trustee, also gave EMC a Limited Power of Attorney
that granted it the power to act for the securitized trust by,
among other things, "execut[ing] and acknowledg[ing] . . . all
documents customarily and reasonably necessary and appropriate"
to conduct foreclosures.

In March 2009, Calef breached his payment obligations under
the note and mortgage, and subsequently fell into default.  When
he failed to cure that default, EMC retained Harmon Law Offices
as foreclosure counsel.  In May 2010, Harmon wrote to Calef
informing him of its representation of EMC and of his right to
reinstate the loan.  Not long thereafter, in anticipation of
foreclosure, Mary Cook, an assistant secretary and vice president
of MERS, executed an assignment of mortgage assigning Calef's
mortgage from MERS to CitiBank, N.A., in its capacity as trustee
for the securitized trust.  The assignment was then recorded in
the Belknap County Registry of Deeds.

A week after the assignment, Harmon sent Calef a copy of the
unrecorded version of the assignment, along with other documents.
Another week after that, Harmon sent Calef a Notice of Mortgage

Foreclosure Sale.[2]  That notice included the following language, as mandated by N.H. Rev. Stat. Ann. § 479:25:  "[y]ou are hereby notified that you have a right to petition the superior court for the county in which the mortgaged premises are situated, with service upon the mortgagee, and upon such bond as the court may require, to enjoin the scheduled foreclosure sale."  (The original was entirely capitalized; the court has employed lower-case text here for readability's sake.)  Calef did not file such a petition.

Although the sale was briefly postponed, it ultimately went forward on September 7, 2010.  Citibank, N.A., as trustee, was the high bidder, purchasing the property for $800,900.44.  On October 18, 2010, the Foreclosure Deed, accompanied by an affidavit signed by "Tamara S. Reitz, Vice President of EMC Mortgage Corporation as Attorney-in-fact for Citibank, N.A. as Trustee," was recorded with the Belknap County Registry of Deeds. Calef filed the present action in Belknap County Superior Court

---

[2]At oral argument, Calef--speaking on his own behalf, not through counsel--claimed that he had never received this notice, and also related a number of other facts that were neither included in the complaint nor supported by the record evidence. While the court does not wish to seem insensitive to Mr. Calef's concerns about the foreclosure and the events leading up to it, those facts were not properly presented to this court in response to the defendants' motion for summary judgment, see supra n.1, and this court cannot take them into account when considering that motion.

on October 14, 2011.  Defendants removed the action to this

court.  See 28 U.S.C. § 1441.

### III. **Analysis**

Calef's complaint, filed by counsel, alleges six "specific

counts" that, with one exception, request certain forms of relief

rather than identifying the legal theories upon which his claims

to relief are premised.[3]  Defendants, to their credit, have

gamely attempted to divine those theories from the various

factual allegations of the complaint.  Their assessment, which

Calef has not disputed and in which the court concurs, is that

Calef's theories fall into two general categories:  (1) claims

related to pre-sale conduct (specifically, claims that the

assignment of the mortgage from MERS to Citibank was invalid) and

---

[3]Specifically, the counts are for (1) injunctive relief to
enjoin eviction; (2) petition to quiet title; (3) declaratory
judgment; (4) petition to invalidate foreclosure sale and nullify
effect of recording foreclosure deed; (5) consequential damages
and attorneys fees; and (6) violation of the Consumer Protection
Act ("CPA"), N.H. Rev. Stat. Ann. 358-A.  As best the court can
tell, the final count--the only one to identify a specific cause
of action--is based upon the same alleged conduct as the other
counts, and would fail for the reasons discussed infra.  And, in
any event, Calef withdrew his CPA claim at oral argument on the
defendants' motion.

At oral argument, Calef also disclaimed many of the theories
advanced in his complaint.  Indeed, it seemed the only theories
Calef did not disclaim were the theories first advanced in his
opposition to the defendants' motion and referenced in n.5 infra.
Because, however, it is unclear to the court exactly which
theories Calef now intends to press, this order addresses all of
the theories pleaded in Calef's complaint.

(2) claims related to post-sale conduct (specifically, claims that the foreclosure deed and accompanying affidavit were invalid).  Defendants argue that the first category of claims is barred by N.H. Rev. Stat. Ann. § 479:25, II, because Calef failed to petition the superior court to enjoin the foreclosure prior to the sale, and that the second set of claims each fail as a matter of law.  As discussed below, defendants are correct, and are entitled to summary judgment in their favor.

### A.    Plaintiff's claims related to the assignment

Calef's assertion that the foreclosure was void due to the invalidity of the assignment from MERS to Citibank appears to rest on four distinct theories:

- Aegis, the lender for which MERS originally served as nominee, ceased doing business in 2007, and for that reason MERS could not assign the mortgage to Citibank in 2010, Compl. ¶ 15; see also id. Count IV, ¶ 4;

- Mary Cook, who executed the assignment, is "a known Robo-Signer," id. ¶ 12, and had a "clear conflict of interest" because she allegedly "represented both the assignor and the assignee in the transaction, as well as the servicer," id. ¶ 16;

- the notarization of the assignment was on a separate page from the assignment itself and therefore "could potentially be attached to quite literally any document in need of notarization," id. ¶ 17; and

- MERS did not hold the promissory note at the time of the assignment, and thus could not validly assign the mortgage to Citibank, id. ¶ 34.

While the legal significance of these allegations to the validity of the foreclosure is dubious, the court need not examine them in detail given the scope and effect of N.H. Rev. Stat. Ann. § 479:25, II.  In relevant part, that provision reads:

> Notice of the [foreclosure] sale as served on or mailed to the mortgagor shall include the following language:
>
> "You are hereby notified that you have a right to petition the superior court for the county in which the mortgaged premises are situated, with service upon the mortgagee, and upon such bond as the court may require, to enjoin the scheduled foreclosure sale."  Failure to institute such petition and complete service upon the foreclosing party, or his agent, conducting the sale prior to sale shall thereafter bar any action or right of action of the mortgagor based on the validity of the foreclosure.

N.H. Rev. Stat. Ann. § 479:25, II (emphasis added).  Under this section, a mortgagor, "to preserve a challenge to the validity of the foreclosure sale," must file an action to enjoin the foreclosure prior to the sale.  Gordonville Corp. N.V. v. LR1-A Ltd. P'ship, 151 N.H. 371, 377 (2004).  If the mortgagor fails to do so, he or she may not challenge the foreclosure's validity "based on facts which the mortgagor knew or should have known soon enough to reasonably permit the filing of a petition prior to the sale."  Murphy v. Fin. Dev. Corp., 126 N.H. 536, 540 (1985); see also People's Utd. Bank v. Mtn. Home Developers of Sunapee, LLC, 858 F. Supp. 2d 162, 167-68 (D.N.H. 2012).

The defendants argue, persuasively, that this section precludes Calef from pressing his assignment-related claims in this case.  It is undisputed that:

- EMC, through counsel, sent Calef a copy of the unrecorded assignment, and the assignment itself was recorded, more than a month prior to the sale;

- The notice of sale that counsel sent to Calef contained the language required by § 479:25, II; and

- Calef did not "petition the superior court for the county in which the mortgaged premises are situated . . . to enjoin the scheduled foreclosure sale" prior to the sale.

Insofar as Calef's claims are premised upon the asserted invalidity of the assignment, then, it would appear that Calef "knew or should have known" the facts related to that assignment "soon enough to reasonably permit the filing of a petition prior to the sale" (he has not, at any rate, argued otherwise).  He did not do that, despite being apprised of his right to do so, and ample New Hampshire case law supports the conclusion that he is now barred from raising his assignment-related claims.  See, e.g., Fuller v. Fed. Nat'l Mortg. Ass'n, No. 218-2011-CV-00668, slip op. at 4-6 (N.H. Super. Ct. Oct. 2, 2012) (§ 479:25, II barred challenge to foreclosure based on alleged invalidity of assignment where plaintiffs had notice of assignment well before sale); Baril v. JP Morgan Chase Bank, N.A., No. 218-2010-CV-501, slip. op. at 4-6 (N.H. Super. Ct. July 20, 2011) (similar); Fed.

Nat'l Mortg. Ass'n v. Goyal, No. 09-C-0543, 2011 WL 4403839 (N.H. Super. Ct. Feb. 25, 2011) (similar).

Calef does not advance any compelling argument to the contrary.  Citing Magistrate Judge McCafferty's opinion in People's United Bank, Calef asserts that "a breach of fiduciary duty claim against the mortgagee may legitimately be based on the mortgagee's pre-sale conduct."  Memo. in Supp. of Obj. to Mot. for Summ. J. (document no. 24-1) at 2.  Setting aside the fact that Calef's complaint does not aver that any of the defendants breached any fiduciary duties owed to him, Calef misconstrues the significance of People's United Bank.  Judge McCafferty did not hold, as Calef suggests, that a mortgagor who fails to file a pre-sale petition may nonetheless recover based entirely on pre-sale conduct.  Rather, she held where a mortgagor challenges the mortgagee's conduct during the foreclosure sale--which Calef is not doing here--he or she may use pre-sale conduct as evidence in support of that claim (e.g., to show the mortgagee's bad faith). People's Utd. Bank, 858 F. Supp. 2d at 167-68.  Indeed, Judge McCafferty dismissed both claims in that case that were premised solely upon pre-sale conduct, holding that they were barred by § 479:25, II.  Id. at 170-71.

The same result obtains here.  To the extent that Calef's claims are premised upon the alleged invalidity of the

assignment, N.H. Rev. Stat. Ann. § 479:25, II entitles defendants

to summary judgment.[4]

### B.   Plaintiff's claims related to the foreclosure deed

Calef also advances a number of theories as to why the

foreclosure deed and affidavit were invalid:

- EMC, which executed the deed on behalf of Citibank, was not authorized to act as Citibank's attorney-in-fact because no power of attorney was recorded in the registry of deeds, Compl. ¶¶ 19-21;

- Tamara Reitz, who signed the deed, did not have personal knowledge regarding his loan and made "false statements in [the] foreclosure deed affidavit," id. Count V, ¶ 3; see also id. ¶ 29;

- the notarization of the foreclosure deed is on a separate page from Ms. Reitz's signature, id. ¶ 28; and

----

[4]Calef also suggests that he can recover for other pre-sale conduct, arguing in his memorandum that Aegis's transfer of the note to Citibank in 2007 did not comply with the pooling and servicing agreement ("PSA") that created the securitized trust for which Citibank served as trustee.  Memo. in Supp. of Obj. to Mot. for Summ. J. (document no. 24-1) at 7-8.  Assuming, dubitante, that this theory of recovery is not barred by § 479:25, II (and that it is adequately presented in Calef's complaint), it still does not entitle Calef to relief.  As this court has previously explained, a borrower lacks standing to challenge the transfer of a note on grounds that would merely render the transfer voidable (as opposed to void).  LeDoux v. JP Morgan Chase, N.A., 2012 DNH 194, 13-15.  And, as multiple courts have held, alleged noncompliance with a PSA is precisely such a matter.  See, e.g., Butler v. Deutsche Bank Trust Co. Americas, No. 12-cv-10337, 2012 WL 3518560, *7 (D. Mass. Aug. 14, 2012) (citing cases); cf. also In re Correia, 452 B.R. 319, 324-25 (1st Cir. B.A.P. 2011) (borrower lacked standing to object to breaches of PSA).

- the foreclosure deed identifies Citibank as a national association even though "Securitized Trusts are never formed as National Associations . . . , but as corporate entities under specific state laws," <u>id.</u> ¶ 23.[5]

None of these theories withstands scrutiny.

As an initial matter, the court cannot accept the premise on which Calef's deed-related claims rest:  that a defaulted mortgagor whose property has been sold at foreclosure has an enforceable interest in the recording of the foreclosure deed. It is true that "[t]itle to the foreclosed premises [does] not pass to the purchaser until the time of the recording of the deed and affidavit." N.H. Rev. Stat. Ann. § 479:26, III.  The New Hampshire Supreme Court has held, though, that "this rule does not change the fact that the debtor possessed neither a legal nor an equitable interest in the property once the auctioneer's hammer fell and the memorandum of sale was signed." Barrows v. Boles, 141 N.H. 382, 393 (1996) (internal alterations and

---

[5]In opposing defendants' motion, Calef also attempts to raise other supposed deficiencies with the foreclosure deed and affidavit.  <u>See</u>, <u>e.g.</u>, Memo. in Supp. of Obj. to Mot. for Summ. J. (document no. 24-1) at 12-13 (noting that "[t]he signature line of the Foreclosure Affidavit does not clearly delineate that Ms. Reitz is Vice President of EMC Mortgage Corporation and is signing for the Attorney-in-Fact" and that the foreclosure deed states that the property was conveyed to Citibank, N.A. rather than Citibank as trustee).  A party is, however, "not entitled to raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment." Calvi v. Knox Cnty., 470 F.3d 422, 431 (1st Cir. 2006).  And, were the court to consider these supposed deficiencies anyway, they would not entitle Calef to relief for the reasons stated <u>infra</u>.

quotation marks omitted); see also McAdam v. Lorden, 2005 DNH 134, 7-12 (foreclosure sale extinguished mortgagor's interest in property, even where she refused to surrender possession).

Indeed, the New Hampshire statute governing the recording of foreclosure deeds provides that failure to record the foreclosure deed and affidavit as set forth in the statute has but a single consequence:  it "shall render the sale void and of no effect only as to liens and other encumbrances of record with the register of deeds for [the county where the property is situated] intervening between the day of the sale and the time of recording of said deed and affidavit." N.H. Rev. Stat. Ann. § 479:26, II (emphasis added).  In other words, even where a foreclosure deed and affidavit are not recorded at all, that does not affect the validity of the foreclosure sale as to the mortgagor.  It follows that where the recorded deed and affidavit are deficient in some respect--as alleged here--that, too, is a matter of no concern to the mortgagor.

While that is reason enough to grant summary judgment in defendants' favor, each of Calef's theories also fails on its own merit.  They do not require extended analysis:

• As noted above, Citibank granted EMC a limited power of attorney authorizing EMC to act on Citibank's behalf.  That it was not recorded in the registry of deeds is of no legal consequence.  New Hampshire law provides that a power of attorney "may be recorded as required for a deed," N.H. Rev. Stat. Ann. § 477:9 (emphasis added), but does not require

13

recording.  Similarly, § 5-41 of the New Hampshire Title
Examination Standards, upon which Calef relies, provides
only that a power of attorney "ordinarily should be
recorded," not that this is necessary.[6]

- Calef has presented no evidence in support of his assertion
  that Ms. Reitz had no personal knowledge regarding his loan
  or that she made false statements in the affidavit (nor has
  he identified what those supposedly false statements are).
  The undisputed evidence shows instead that Ms. Reitz, as an
  employee of EMC--the loan servicer--had access to all
  records regarding Calef's loan at the time she executed the
  affidavit.  In his interrogatory responses, Calef asserted
  that Ms. Reitz could not have had knowledge of his loan
  because no power of attorney authorizing EMC to act on the
  mortgagee's behalf had been recorded.  But, as just
  discussed, New Hampshire law did not require recording of
  the power of attorney--and even if recording were required,
  the court is at a loss to see how a failure to record the
  power of attorney could conceivably demonstrate that EMC
  employees had no knowledge of Calef's loan.

- Calef has identified, and the court has found, no provision
  or principle of New Hampshire law that requires notarization
  of a document on the same page as the signatories'
  signatures.  No such requirement appears in the Uniform Law
  on Notarial Acts, N.H. Rev. Stat. Ann. § 456-B:1 et seq.,
  which includes comprehensive requirements for notarial acts
  in this state.  Where no statute or case law includes such a
  requirement, this court will not fashion one from whole
  cloth.  Cf. Douglas v. York Cnty., 433 F.3d 143, 153 (1st
  Cir. 2005) ("[A] federal court sitting in diversity
  jurisdiction [has] no license to expand [state] law beyond
  its present limits.").

- Nor has the court found any statute or case law assigning
  any legal significance to the foreclosure deed's supposedly
  incorrect reference to Citibank as a national association
  rather than a "corporate entity," which appears to be at
  most a scrivener's error (if it is truly an error at all).

---

[6]It bears noting, moreover, that the Title Examination
Standards merely "express the practice considered reasonable by
the New Hampshire Bar Association," N.H. Bar Ass'n Title Exam.
Standards § 1-1, and are not an authoritative statement of law.

Calef himself has not even mentioned this theory in his opposition memorandum, let alone sought to defend it, which the court takes as a tacit acknowledgment of its lack of merit.

Defendants are, therefore, also entitled to summary judgment on Calef's claims based upon the alleged invalidity of the foreclosure deed and affidavit.

## IV.   Conclusion

For the reasons set forth above, the defendants' motion for summary judgment[7] is GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  February 21, 2013

cc:  Philip A. Brouillard, Esq.
     Andrew Scott Winters, Esq.
     Mary Ellen Manganelli, Esq.

---

[7]Document no. 22.